**FIFTH DIVISION**
**BROWN, C. J.,**
**RICKMAN, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 1, 2026**

# In the Court of Appeals of Georgia

A26A0366. BOWEN et al. v. COWN.

RICKMAN, Presiding Judge.

The Director of the Environmental Protection Division of the Georgia Department of Natural Resources (the "EPD") filed a verified complaint to enjoin Arnold and Hazel Bowen ("the Bowens") from disposing of domestic septage[1] without a permit. The superior court entered a permanent injunction enjoining this activity, and the Bowens filed this direct appeal. As more fully set forth below, we now vacate the trial court's order and remand this case for further proceedings.

1. The record shows that in October 2023, the EPD issued an administrative order finding that the Bowens had violated various rules and regulations promulgated

---

[1] Domestic septage is a another way to refer to the waste from a domestic septic tank.

under the Georgia Comprehensive Solid Waste Management Act of 1990, as amended, OCGA § 12-8-20 et seq. ("Solid Waste Act"), and the Georgia Water Quality Control Act, OCGA § 12-5-20 et seq. ("Water Quality Act"), by disposing of septage or other domestic solid waste on their land without a permit. The order directed them to cease the activity, hire a professional engineer or geologist, submit groundwater and soil monitoring plans, and undergo periodic inspections to determine compliance. The Bowens did not appeal the ruling, and the EPD subsequently filed a request for entry of judgment in the superior court pursuant to OCGA § 12-8-30.3. The superior court entered the requested judgment making the administrative order the judgment of the court in July 2024. The Bowens directly appealed to this Court, but we dismissed that appeal because a discretionary application was required under OCGA § 5-6-35(a)(1).

In January 2025, the EPD filed a "Verified Complaint to Enjoin Unpermitted Dumping of Septage and Solid Waste," alleging the Bowens were still violating the law in various ways. The superior court entered an order granting the request for a permanent injunction, prohibiting the Bowens from "conducting or allowing

2

unpermitted handling of solid waste" on their property. The Bowens then filed this direct appeal.[2]

2. The facts underlying this appeal are essentially undisputed. The Bowens operate a septic tank disposal business, which involves pumping the contents of domestic septic tanks from various locations into closed trucks and then discharging the contents of the trucks onto land they own in Rockdale County. The Bowens did not have a permit for the disposal of septic tank waste on their property, which led the EPD to file the initial enforcement action and, when compliance was still not forthcoming, the complaint for injunctive relief that is the subject of this appeal. In granting the injunction, the superior court specifically found the Bowens' activities

---

[2] The EPD moved to dismiss this appeal, arguing that – as with their prior appeal – an application for discretionary review was required. However, this case stands on a different footing, and we previously denied the EPD's motion to dismiss. As explained in our unpublished order, while under OCGA § 5-6-35(a)(1), a discretionary application is required to appeal superior court orders "reviewing *decisions* of . . . state and local administrative agencies" (emphasis added), in this case the Bowens are appealing the superior court's subsequent order granting a permanent injunction, which arose from a separate proceeding and which did not mention the administrative order or the 2024 superior court order and "did not enhance, alter, enforce, or clarify any aspect" of those prior rulings. Thus, because this appeal does not involve superior court review of an administrative decision, we concluded that it does not fall within OCGA § 5-6-35(a)(1) and denied the EPD's motion to dismiss.

The EPD also filed a separate, successful contempt action against the Bowens, but they withdrew their appeal from that order.

violated both the Solid Waste Act and the Water Quality Act, as well as the rules and regulations promulgated pursuant to those Acts, "including but not limited to, the unpermitted handling of domestic septage." The Bowens argue that the EPD had no authority to "outlaw" the disposal of septage on their property, asserting, among other things, that the land where the septage was discharged was not subject to regulation by the EPD because it was operated as a family farm; that domestic septage does not fall within the definition of "solid waste" as defined in the Solid Waste Act; the Solid Waste Act does not have a rule or regulation setting out the requirements to obtain a permit for the disposal of septic tank waste; and that the rule in the Water Quality Act detailing the requirements for obtaining a permit for land disposal sites under that Act was promulgated without apparent statutory authority. We consider each of these contentions in turn.

(a) In large part, the various arguments the Bowens advance in this appeal are grounded in their assertion that the disposal of the septage took place on property they operate as a family farm. Although they characterize the evidence that they engaged in "agricultural operations," as that term is defined in OCGA § 1-3-3(4.1), as undisputed, they appear to rely on only the statements of their attorney at the hearing

on the injunction[3] to support this assertion. The trial court made no specific finding as to whether the Bowens operate a farm on their property, and we likewise cannot resolve this issue, which would require both fact-finding and the development of "facts" on which to base such a determination. In any event, as more fully set forth below, we do not think their characterization of their property as a family farm places it outside the regulatory authority of the EPD.[4]

As an initial matter, we note that there is nothing in the language of either the Solid Waste Act or the Water Quality Act that exempts farmland from the regulatory authority of the EPD.[5] The Bowens, however, say that their family farm is specifically

---

[3] The Bowens' attorney stated at the hearing that it was his understanding that the Bowens have sheep and goats on the property and grow grass and hay to feed them.

[4] We have also considered and find to be without merit the various arguments the Bowens make concerning exemptions under federal law and related assertions.

[5] As stated above, the trial court determined that the Bowens' unpermitted disposal activities violated both the Solid Waste Act and the Water Quality Act. Although, as explained below, the applicability of the Water Quality Act is not altogether clear in this case, it is worth noting that the Water Quality Act rules specifically refer to agricultural land as a favorable septage disposal site to the extent such land has a low potential for public exposure and sets out pathogen control requirements when animals graze on the land or crops or grass are grown there. Ga. Comp. R. & Regs. r. 391-3-6-.23(2)(m),(n);(9). This further undercuts the Bowens' argument that farmland is outside the regulatory authority of the EPD under these

excluded from the Solid Waste Act because it is not a "solid waste handling facility" under OCGA § 12-8-22(35), which defines such facility as "any facility *the primary purpose* of which is the storage, collection, transportation, treatment, utilization, processing *or disposal* . . . of solid waste."(emphasis added). Although the Bowens assert that their property is not a facility primarily used as a solid waste disposal site, they have pointed to nothing in the record to demonstrate whether their property is *primarily* used as farmland or *primarily* used for septage disposal.

Moreover, solid waste handling facilities are not the only type of land disposal regulated under the Solid Waste Act. For example, a "[d]isposal facility" is defined more broadly in the Solid Waste Act to include "*any* facility *or location* where the final deposition of solid waste occurs[.]" OCGA § 12-8-22(8) (emphasis added). Thus, the Solid Waste Act does not apply only to disposal "facilities." In fact, the provision of the Solid Waste Act that specifically governs the regulation and permitting of the type of waste at issue here – "septic tank waste from any one or more septic tank pumping and hauling businesses" – refers to the regulation and permitting of a "land disposal *site*."OCGA § 12-8-41. Based on the undisputed evidence, the Bowens were using at

---

Acts.

least a portion of their property as a "disposal site" for the septic tank waste they collected as part of their pumping and hauling business. Accordingly, we reject the Bowens' contention that their designation of their land as farmland takes their septage disposal activities outside the regulatory authority of the EPD.

(b) The Bowens also argue that, regardless of the *designation* of their property, their disposal activities cannot be regulated under the Solid Waste Act because domestic septage does not qualify as a solid waste. Solid waste is defined broadly in the Act to include

> any garbage or refuse; sludge from a waste-water treatment plant, water supply treatment plant, or air pollution control facility; and other discarded material including solid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations and community activities, *but does not include . . . solid or dissolved materials in domestic sewage*[.]

OCGA § 12-8-22(33) (emphasis added). Pointing to this definition, the Bowens argue that because domestic *sewage* is specifically exempted from the definition of solid waste under the Solid Waste Act, domestic *septage*, which they say is "indistinguishable" from sewage since it is generated from the same sources, should also be excluded from the definition of solid waste. However, domestic sewage is

7

exempted from the definition of solid waste and thus not regulated under the Solid Waste Act because it is regulated in the Water Quality Act, OCGA § 12-5-29(a).[6] Further, the rules promulgated under the Water Quality Act specifically distinguish between domestic sewage and domestic septage, making it clear that they are not, in fact, indistinguishable.[7] Lastly, as stated above, OCGA § 12-8-41 plainly brings the land disposal of septage collected as part of a pumping and hauling business within the regulatory authority of the EPD under the Solid Waste Act, making it clear that

---

[6] The Solid Waste Act and the Water Quality Act both appear in Title 12 of the Georgia Code. Broadly stated, the Solid Waste Act seeks to protect the health and safety of the citizens of this State from the environmental concerns that arise from the disposal of solid waste, OCGA § 12-8-21, while the Water Quality Act protects our water quality. OCGA § 12-5-21. These are complementary, and sometimes overlapping, activities. For example, "pollutant" is defined to include, among many other things, "solid waste" "discharged into the waters of the state." OCGA § 12-5-22(9). And, as discussed in Division (2)(c), it appears that in certain specified circumstances, the land disposal of septage may also be regulated under the Water Quality Act. See Ga. Comp. R. & Regs. 391-3-6-.23(1)(a) (establishing regulations and permitting requirements for "any land disposal site that receives septic tank waste (septage) *that is applied via subsurface injection or incorporation into the soil.*" (emphasis added).

[7] Compare Ga. Comp. R. & Regs. r. 391-3-6-23(2)(i), which defines "domestic septage" as "the liquid or solid material removed from a septic tank, [but] does not include liquid or solid material removed from a septic tank or similar treatment works that receives either commercial wastewater or industrial wastewater" with id. (2) (j), which defines domestic sewage as "water and wastewater from humans or household operations that is discharged to a treatment works."

domestic septage is considered a solid waste under that Act even if domestic sewage is not.

(c) *Control and Permitting of Domestic Septage.* The Bowens also argue that even if OCGA § 12-8-41 appears to grant regulatory and permitting authority to the EPD over the land disposal of septage from a septic tank pumping and hauling business such as their business, the EPD never promulgated any rules or regulations governing the permitting of this activity despite being explicitly directed by the legislature to do so. OCGA § 12-8-41 provides in pertinent part as follows: "[t]he department shall provide by rule or regulation for the regulation and permitting of any land disposal site that receives septic tank waste from any one or more septic tank pumping and hauling businesses." The Bowens are correct that there appears to be no specific rule or regulation promulgated pursuant to OCGA § 12-8-41 that specifically sets out the requirements for obtaining a land disposal site permit by a septage hauling business. Although the EPD points to other permitting statutes and regulations in the Solid Waste Act, it is undisputed that the Bowens never applied for a permit under OCGA § 12-8-41 or any other provision of the Act and no determination has been made

concerning the applicability of these other statues, rules or regulations.[8] Thus, the applicability of those other statutes and regulations has not been squarely addressed.

Further, the trial court specifically found that the land disposal of the septage here violated the permitting requirements of both that Act and the Water Quality Act. As noted in footnote 6, the Water Quality Act contains a rule that appears to regulate and set out permitting requirements for land disposal of septage that occurs via a specific process. However, the record is not developed on whether the septage disposal method used here comes within this rule. Thus, we find it necessary to remand to the trial court for further fact finding on this issue.

(d) Moreover, the permitting issues under both Acts are intertwined with the Bowens' claim that the statutes and regulations at issue in this case do not pass muster under the nondelegation doctrine. See *Republican National Comm. v. Eternal Vigilance Action, Inc.,* 321 Ga. 771, 792(6) (917 SE2d 125) (2025).[9] Nondelegation scrutiny

---

[8] For example, OCGA § 12-8-24 provides that "No person shall engage in solid waste handling in Georgia or construct or operate a solid waste handling facility . . . without first obtaining a permit[.]"

[9] Although a nondelegation analysis implicates certain constitutional separation of power issues, the question here concerns the rulemaking authority of an executive branch agency and does not draw into question the "the constitutionality of a law, ordinance or constitutional provision." Ga. Const. of 1983, Art VI, Sec. VI, Para. II.

involves a three step process. Id. "First, we determine whether the General Assembly actually delegated the authority at issue to the executive branch agency." Id. at 795. As the next step, we determine whether the General Assembly possessed the allegedly delegated power. Id. As the last step, "we assess whether the delegation was permissible." Id.

Here, the trial court did not make any specific ruling on whether the regulatory scheme at issue here survives nondelegation scrutiny. Although we believe we would be within our discretion to undertake this analysis as an initial matter, it appears to us that the record must be, as set out above, further developed on the permitting process for permits issued pursuant to the authority set out in OCGA § 12-8-41[10] of the Solid Waste Act and on the applicability of the permitting requirements of the Water Quality Act to the type of disposal activity used here so that an initial determination

Accordingly, jurisdiction of this issue does not fall within the exclusive appellate jurisdiction of the Supreme Court of Georgia. E.g., *Eternal Vigilance*, 321 Ga. at 774(1).

[10] We note that the statute specifies that new permits issued for land disposal sites that receive septic tank waste from septic tank pumping and hauling businesses "shall" be issued "under th[at] Code section."

can be made about what statutes and rules are at issue here.[11] Once that process is complete, the trial court should then undertake, in the first instance, a nondelegation doctrine analysis.[12] Accordingly, we vacate the trial court's order and remand for further proceedings, which may include evidentiary hearings, consistent with this opinion.

*Judgment vacated and case remanded with direction. Brown, C. J., and Mercier, J., concur.*

---

[11] For example, the Bowens argue that the rule in the Water Quality Act that purports to regulate septage that is applied via subsurface injection or incorporation into the soil, see Ga. Comp. R. & Regs. r. 391.3-6-.23(1)(a), was enacted without proper statutory authority because there is no statute comparable to OCGA § 12-8-41 in the Water Quality Act. However, delving into this issue without knowing whether the septage disposal method mentioned in that rule was even used here raises the risk of issuing an opinion that is merely advisory.

[12] To be clear, the Solid Waste Act appears in Chapter 8 of Title 12, and the Water Quality Act appears in Chapter 5 of Title 12. The rules accompanying the Solid Waste Act are designated as Ga. Comp. R. & Regs., r. 391-3-4 and those accompanying the Water Quality Act are at Ga. Comp. R. & Regs., r. 391-3-6. The Water Quality Act contains a rule that sets out certain requirements for a permit under OCGA § 12-8-41. Ga. Comp. R. & Regs. r. 391-3-6-.23(17)(a). It will be for the trial court to determine in the first instance whether setting out permitting requirements in an agency rule promulgated under the Water Quality Act for a code section that appears in the Solid Waste Act is permissible under the nondelegation doctrine.